[Crim. No. 1135.   Fourth Dist.   Feb. 8, 1957.]

THE PEOPLE, Respondent, v. JAMES CORBETT
WALTERS, JR., Appellant.

Harmon C. Brown, for Appellant.

Edmund G. Brown, Attorney General, Norman H. Sokolow and Benjamin E. King, Deputy Attorneys General, for Respondent.

MUSSELL, J.—Defendant was accused of having violated Health and Safety Code, section 11500, a felony, in that on or about June 7, 1956, in the county of Riverside, he did wilfully and unlawfully have in his possession a narcotic commonly known as marijuana. It was further alleged in the information that on or about April 28, 1953, he had been found guilty of a violation of the said section of the Health and Safety Code. Defendant entered a plea of not guilty and admitted the prior conviction. A jury trial resulted in a verdict finding him guilty as charged. His application for probation was denied and he was sentenced to state's prison. He appeals from the order of the court denying probation, the judgment of conviction and the order denying his motion for a new trial. ■ Since an order denying probation is not an order specified in section 1237 of the Penal Code from which an appeal may be taken, and is an order made before judgment was pronounced, the order is reviewable on an appeal from the judgment and the attempted appeal from the order will be dismissed. (*People* v. *Robinson,* 43 Cal.2d 143, 145 [271 P.2d 872].)

On June 7, 1956, at about 4 a.m., Officers Willis, Brooks and Mawn called at an apartment in Riverside occupied by the defendant's wife. They knocked at the door and Mrs. Walters answered. The officers asked her if Mr. Walters (the defendant) was in and upon receiving an affirmative answer, they stated they would like to talk to him. Mrs. Walters then told them to "come on in," and the officers entered. Officer Willis testified in this connection as follows:

"Q. What took place then after you went inside? A. Sgt. Brooks in my presence asked Mrs. Walters if he could look around the apartment—that we had reason to believe that there might be some narcotics in the apartment, and she stated

it was all right to look around—that there wasn't anything in the apartment. And at that time Sgt. Brooks asked the defendant if he had any narcotics on him, or in the apartment, and he said he did not have. Sgt. Brooks asked him if he didn't have any narcotics in the apartment that he would certainly have no objection to us looking around. He said, 'You are here. You might as well look around.' ''

Officer Mawn testified as follows: "A. Yes. Sgt. Brooks knocked at the door and Mrs. Walters answered it. She was asked if James Walters was in the house. She answered, 'Yes.' We asked if we could see James. She said to come in. All three of us entered the house. When we got into the house, Jim was starting to get dressed.

"THE COURT: By 'Jim' you mean——

"A. Mr. Walters. And Sgt. Brooks asked his wife if there was any narcotics in the house. She answered, 'No.' He asked Mr. Walters if there was any narcotics in the house and he answered, 'No.' Sgt. Brooks asked, 'Do you mind if we search the place?'

"Mrs. Walters answered, 'No,' and Mr. Walters said, 'Well, as well as you are in here, you might as well.' At that time all three of us started searching the apartment. Lt. Willis found the suede jacket in the closet with the seed in the pocket. Sgt. Brooks found the twig under the cushion on the sofa. Then Lt. Willis found the cigarette in the ash tray.''

The apartment contained a kitchen, a large room with a bed and couch, a clothes closet and a bathroom. Officer Willis found several articles of men's clothing in the closet, a suede jacket, trousers and shirts. When asked if some of these articles of clothing were his, the defendant stated they were. He further stated that he was still married to Mrs. Walters; that he had been separated from her and from time to time he would go back and stay with her, and that he was staying with her that night. Officer Willis found a seed in the pocket of the suede jacket and when asked what the article was, the defendant stated that it looked like a marijuana seed to him; that the coat was not his, that it belonged to another individual. Referring to the seed, he said, "That probably belongs to my friend, Roger Gevrez." Defendant also stated that there were no other narcotics on the premises; that any additional narcotics found on the premises would belong to him and to no one else, and not to his wife. Further search under a pillow on the couch in the living rom revealed

a small one-half inch long stem with some green leafy substance on it. The defendant stated it looked like marijuana to him and when asked if it belonged to him, stated that it "could be"; that he had smoked marijuana in the apartment a week or 10 days prior to that date. Officer Willis also found a partially smoked cigarette in an ash tray in the apartment and, upon examining it, found that it contained a green leafy substance. When asked what the substance was, the defendant said, "My God, it is marijuana. This is too much and it looks like you got me. I accept responsibility for anything found here." The defendant was then placed under arrest and the articles found by the officers were placed in an envelope. Before leaving the apartment, Officer Willis asked the defendant if he was sure that all the evidence found there belonged to him, to which the defendant replied "Yes, it doesn't belong to my wife. It belongs to me." The articles found by the officers were delivered to a chemist and he found and testified that they contained marijuana leaves.

The defendant testified that he was in his wife's apartment approximately 40 minutes before the officers arrived and was in bed when they came; that "they said they wanted to talk to me and that they had arrested two of my friends, Paul Chase and Roger Gevrez, earlier. Would I mind to a search of the house and I said, "Well, as far as I am concerned, I don't. It is not my house"; that he told Officer Willis that the seed found in the jacket was not his and that he knew nothing about the leafy substance found under the pillow on the sofa or the cigarette found in the ash tray.

Roger Gevrez testified that on January 5, 1956, he had rolled and smoked a marijuana cigarette while sitting on the sofa in the apartment.

Mrs. Walters testified that she and the defendant separated about February 7, 1956; that she rented the apartment; that the defendant came there occasionally and sometimes would stay all night; that she could not say for sure whether the defendant ever brought marijuana to the apartment.

The officers had no search warrant or warrant of arrest when they entered the apartment occupied by the defendant or when they searched the premises. Defendant contends that the trial court committed prejudicial error in admitting into evidence exhibits one and two (the cigarette removed from the ash tray and the small twig found on the sofa or couch). This contention is based on the claim that

said exhibits were obtained in violation of the constitutional guarantees against unlawful search and seizure, thus coming within the exclusionary rule as stated in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]. We find no merit in this contention. The record shows that when the officers knocked on the door of the apartment and stated to Mrs. Walters that they would like to come in and talk to the defendant, she stated that the defendant was inside and to "come on in"; that after the officers entered, Sergeant Brooks asked if he could look around; that they had reason to believe there might be some narcotics in the apartment; that Mrs. Walters said it was all right to look around, that there wasn't anything in the apartment; that when the defendant was asked if he had any narcotics on him or in the apartment he replied in the negative and when asked whether they minded if the place were searched, Mrs. Walters responded "No," and defendant said, "You are here. You might as well look around." It is apparent from this testimony that both the defendant and his wife freely and expressly consented to the search of the apartment.

In *People* v. *Burke,* 47 Cal.2d 45, 49 [301 P.2d 241], the court said:

"It was not unreasonable for the officers, without any show of force or coercion, to call upon the suspected defendant at his home, or to ask him questions, or to accept defendant's statement, 'No, go ahead,' in answer to the inquiry, 'You don't mind then if we search your apartment do you?' Under the circumstances here, as under those in *People* v. *Michael* (1955), 45 Cal.2d 751, 754 [290 P.2d 852], a holding that as a matter of law defendant acted because of an unlawful assertion of authority by the officers would be unjustified. (See also *People* v. *Martin* (1955), 45 Cal.2d 755, 761 [290 P.2d 855].)"

It was there further held that whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.

In *People* v. *Winston,* 46 Cal.2d 151, 162 [293 P.2d 40], the court said: "While the Cahan case held that 'evidence obtained by police officers in violation of federal and state constitutional prohibitions against *unreasonable* search and seizure is inadmissible,' it did 'not purport to inhibit the right of law enforcement officers to conduct a *reasonable* search

and seizure incident to a valid arrest.' (*People* v. *Coleman,* 134 Cal.App.2d 594, 599 [286 P.2d 582].) It is further said in the Coleman case, pages 599-600: 'It is well settled that a search without a warrant is valid where it is incident to a lawful arrest, if it is reasonable and made in good faith; and that a seizure, during such a search, of evidence related to the crime is permissible." (Citations.)

In the instant case the evidence supports the conclusion that defendant was arrested after the marijuana seed was discovered in the suede jacket and that further search was proper as an incident to the lawful arrest of the defendant. The defendant had previously agreed to sell a pound of marijuana to Officer Willis and the officers had reasonable grounds for believing that the defendant possessed narcotics. For that reason they asked to be permitted to talk to him. ▉ If the officers had reasonable cause to arrest the defendant it was immaterial whether the search was initiated before or after the arrest. (*People* v. *Stewart,* 144 Cal.App.2d 555, 559 [301 P.2d 301].)

Defendant next contends that "The court erred in denying defendant's motion to strike from the evidence the admissions of the defendant on the ground the prosecution had failed to prove the corpus delicti independently of these admissions." This contention is likewise without merit. ▉ To prove a prima facie case of the corpus delicti all that was necessary was to show a reasonable probability of the unlawful possession of marijuana by a person and it was not necessary to prove defendant's connection with the marijuana in order to establish the essential elements necessary to prove the corpus delicti. (*People* v. *Cuellar,* 110 Cal.App.2d 273, 276 [242 P.2d 694].) Moreover, the sufficiency of the evidence rested solely with the jury and there being circumstantial evidence to support the conclusion reached in the court below, it cannot be here set aside. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

▉ Finally, it is argued that the court erred in its further instruction to the jury on the question of possession. In this connection the record shows that, in response to a request by the jury for further instruction on the question of possession, the court read the instructions theretofore given as to the elements of possession of a narcotic and knowledge of the article possessed, and also stated as follows:

"The Court will further instruct the Jury that from the evidence, in the court's analysis of same, there is no ques-

tion but what the Defendant knew what marijuana was; also, that he knew that marijuana had been smoked in the apartment..

"The Court will further instruct you that as far as the evidence shows, Defendant and Mrs. Walters were legally married, and had not been legally separated. He was there at her invitation in the apartment rented by her and had been there on fairly frequent occasions; therefor___, the Court's analysis of that evidence would be that there were certain community property rights there, so that anything in the apartment was under the joint control and possession of both defendant and Mrs. Walters."

We find no prejudicial error in the quoted instruction. We do not construe the statement of the court as indicating belief that the defendant was guilty of the offense charged. It was quite obvious that the defendant knew what marijuana was and that it had been smoked in the apartment. There was no contention otherwise. The evidence offered by the defendant established that he and Mrs. Walters were legally married and that he was there, at her invitation, on frequent occasions. Certainly, these remarks were not to be interpreted as statements of a belief in the guilt of the defendant. The further remark by the trial court that anything in the apartment was under the joint control and possession of both, the defendant and Mrs. Walters, did not amount to prejudicial error. Moreover, the court instructed the jury that if it appeared that any remarks of his expressed an opinion concerning the significance or effect of any evidence, nevertheless it was the duty of the jury to exercise the same independence of judgment in weighing his comments as they are entitled to exercise in weighing the testimony of the witnesses and the arguments of counsel. The court further instructed the jury as follows:

"You will keep in mind that you are the exclusive judges of the credibility of the witnesses and of all questions of fact submitted to you. Such authority as the trial judge has to express his personal thought on any of these matters is confined to the sole purpose of aiding you in arriving at a verdict, and may not be used, and is not used in this case, to impose his will upon you or to compel a verdict." We find no prejudicial error in the criticized instructions.

The record herein shows that the probation officer's report was considered by the court and probation was denied. Probation is not a matter of right; it is an act of

clemency, the granting and revocation of which are within the sound discretion of the trial court. (*People* v. *Jennings,* 129 Cal.App.2d 120, 123 [276 P.2d 124].) No abuse of discretion appears in the order denying probation and the attempted appeal therefrom is dismissed.

The judgment and order denying a new trial are affirmed.

Barnard, P. J., and Griffin, J., concurred.