[Crim. No. 5927.   Second Dist., Div. One.   June 13, 1958.]

THE PEOPLE, Appellant, v. ROSARIO JOSEPH
BOUCHARD, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Fred N. Whichello, Lewis Watnick and Robert Lederman, Deputy District Attorneys, for Appellant.

No appearance for Respondent.

WHITE, P. J.—On February 6, 1957, the District Attorney of Los Angeles County filed an information charging defendant with a violation of the Dangerous Weapons' Control Law (Pen. Code, § 12020) in that defendant had in his possession metal knuckles, or as commonly referred to, brass knuckles.

When the cause was called for plea in the superior court, defendant made a motion pursuant to section 995 of the Penal Code on the ground "That there was an illegal search and seizure, Your Honor; that there was no information on which to base probable cause. . . ." The motion was granted and the People appeal therefrom.

As to the evidentiary features of this case when it was presented to the committing magistrate, the record reflects that Officer R. E. Byron testified he was a Los Angeles city police officer assigned to the Robbery Division, and one of the arresting officers. That the arrest occurred on January 16, 1957, in Room 17 of a hotel in the city of Los Angeles. The officer testified that prior to going to the room he had received information that two roommates of defendant had been identified as participants in a robbery and had been arrested; that defendant was not present at the time of his roommates' arrest; and that there had been four active participants in the robbery. This information had been received from Sergeant Murphy who arrested the other two persons.

At approximately 10:20 a. m. on January 16, 1957, the officer went to the room to "apprehend the third occupant of the room." At the time he had neither a warrant of arrest nor a search warrant.

The officer knocked on the door. Defendant opened it. Officer Byron and another officer who accompanied him identified themselves and asked defendant his name, which he gave them. The officers "informed him the reason we were there and asked the defendant if he had in his possession in the room or available to him a gun or any metal objects which might be used as a gun." Defendant stated that he did not own a gun. The officers asked him if they could search the room. Defendant said, "Yes." As Officer Byron walked toward the bed, the defendant stated, "If you look under the mattress there is a pair of brass knuckles." The officer lifted the mattress and found a pair of brass knuckles which were marked Exhibit 1 for Identification, and later received into evidence. In the officer's expert opinion they are brass knuckles.

The officer asked defendant to whom the brass knuckles belonged. The latter stated he had found them in the room when "they" moved into the room. Asked why he had kept them, defendant said, ". . . he didn't know, he thought he would just keep them." He said that he didn't know why he had put them under the mattress. The evidence indicates that the officers were just inside the doorway and had searched the defendant for weapons before they asked him for permission to search the room.

Frank Estrada, also a police officer of the city of Los Angeles, attached to the robbery division, testified that in the course of his investigation of the case he had a conversation with defendant on January 17, 1957, at the central jail, and that defendant's statements were freely and voluntarily made. The officer asked him where he had obtained the brass knuckles, and the latter stated, ". . . that a girl by the name of Janet Beasley had given the knuckles to him the first part of December. . . ."

Defendant did not testify at the preliminary examination nor did he offer any evidence in his behalf.

The questions presented on this appeal are:

"1. Do the facts and circumstances herein establish reasonable cause for the search of defendant's apartment and the seizure of the brass knuckles? and

"2. Was there reasonable cause to hold the defendant to answer in the Superior Court?"

From the foregoing uncontradicted evidentiary narrative it is manifest that the evidence in question (brass knuckles) was voluntarily produced in response to a reasonable inquiry (*People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]). ■ Applicable and pertinent also to the case now engaging our attention, is the following language of our Supreme Court in *People* v. *Burke*, 47 Cal.2d 45, 49 [301 P.2d 241]: "It was not necessary here, however, for the People to show that the search and seizure were reasonable as incident to a proper arrest, for they showed that defendant freely consented to the search of his apartment which disclosed the evidence which defendant has since claimed was illegally obtained. ■ It was not unreasonable for the officers, without any show of force or coercion, to call upon the suspected defendant at his home, or to ask him questions, or to accept defendant's statement, 'No, go ahead,' in answer to the inquiry, 'You don't mind then if we search your apartment do you?' Under the circumstances here, as under those in *People* v. *Michael* (1955), 45 Cal.2d 751, 754 [290 P.2d 852], a holding that as a matter of law defendant acted because of an unlawful assertion of authority by the officers would be unjustified. (See also *People* v. *Martin* (1955), 45 Cal.2d 755, 761 [290 P.2d 855].)"

■ In the instant case we are persuaded that there was in fact no search or seizure as those terms are known to the law. As was said by this court in *People* v. *West*, 144 Cal. App.2d 214, 219 [300 P.2d 729]: "As used in this connection, the term implies some exploratory investigation or an invasion and quest, a looking for or seeking out. The quest may be secret, intrusive or accomplished by force, and it has been held that a search implies some sort of force, either actual or constructive, much or little. A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search.' ■ A seizure contemplates a forcible dispossession of the owner and it is not a voluntary surrender. (79 C.J.S. 775-776.) In this case, the defendant showed the officers the clothing and there is no evidence whatsoever that the apparel was forcibly taken from him.

"Even, however, if it be held that there was a search by the officer to find the name on the laundry tag, the evidence reveals that the defendant voluntarily showed the officer the

clothing. ▮ Since the defendant voluntarily produced the evidence against himself, any constitutional rights he might have had were not violated and any search or taking of evidence pursuant to his consent is not unreasonable. Consent is a question of fact and in this particular case, the defendant did not testify." (See also *People* v. *Garnett*, 148 Cal.App.2d 280, 284 [306 P.2d 571]; *People* v. *Allen*, 142 Cal.App.2d 267, 281 [298 P.2d 714].)

▮ As to the arrest of defendant, such action was certainly reasonable. Penal Code, section 836, subdivision 3, authorizes an officer to make an arrest without a warrant "When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." When defendant advised the officer that a pair of brass knuckles was under the mattress, no doubt was left as to the reasonableness, but as well, the necessity for an investigation, on the basis of reasonable cause for belief that a felony was then and there being committed in the officer's presence. And from defendant's admission that he kept the brass knuckles, it was certainly reasonable to assume that his possession thereof constituted a violation of Penal Code section 12020 (*People* v. *McKinney*, 9 Cal.App.2d 523, 524 [50 P.2d 827]; *People* v. *Rios*, 46 Cal.2d 297, 298 [294 P.2d 39]).

▮ Since the officers had reasonable cause to arrest the defendant and to seize the brass knuckles as evidence it follows that it was immaterial whether the search was initiated before or after the arrest. (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Walters*, 148 Cal.App.2d 426, 431 [306 P.2d 606]; *People* v. *Stewart*, 144 Cal.App.2d 555, 559 [301 P.2d 301].)

▮ As has often been repeated, it is the record before the magistrate that is decisive. The latter may weigh the evidence, may resolve conflicts, and may judge of the credibility of witnesses, but these things the superior court may not do when testing the sufficiency of the showing there made on a motion to set aside the information under section 995 of the Penal Code (*People* v. *Jackson*, 146 Cal.App.2d 553, 556 [303 P.2d 767].) With these rules in mind, and upon the authority of and for the reasons stated in *People* v. *Platt*, 124 Cal.App.2d 123, 130, 131, 134 [268 P.2d 529], we are satisfied that the court erred in setting aside the information.

The order is reversed.

Fourt, J., and Lillie, J., concurred.