[Crim. No. 3424.   First Dist., Div. Two.   Oct. 16, 1958.]

THE PEOPLE, Respondent, v. LAFAYETTE SMYRE, Appellant.

*Assigned by Chairman of Judicial Council.

Benjamin M. Davis and Yin Soon Wong for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Richard S. L. Roddis, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—On February 5, 1957, the defendant and one Mary Frazer were charged by information with the possession of heroin on January 18, 1957, in violation of Health and Safety Code, section 11500. The information was amended to allege three prior convictions as to Mary Frazer and one prior conviction as to the defendant for violation of Health and Safety Code, section 11500. The defendant entered a plea of not guilty and denied the prior conviction. Mary Frazer entered a plea of not guilty and admitted the prior convictions. On March 7, 1957, defendant was charged by indictment with two counts of violation of Health and Safety Code, section 11500; one, for the possession of heroin on February 20, 1957, and the second, for the sale, furnishing or giving away of heroin on February 20, 1957. The indictment was amended to also charge a prior conviction. On April 5, 1957, defendant entered his plea of not guilty to each count of the indictment and denied the alleged prior conviction. Trial date was set for June 10, 1957. On June 10, 1957, the information was dismissed as to Mary Frazer, under Penal Code, section 1099, on motion of the district attorney. By permission of the court the indictment and information as to the appellant were consolidated for trial. The defendant changed his plea to admit the prior conviction charge.

At the trial, after the conclusion of the prosecution's case in chief, the defendant moved to strike certain evidence, for an advised verdict on the information, and for a dismissal of

the possession charge of the indictment. All of these motions were denied. No evidence was offered on behalf of the defendant. A jury trial resulted in a verdict of guilty on both counts charged in the indictment and on the charge of the information. On June 14, 1957, the court granted defendant's motion to dismiss the possession count of the indictment and denied defendant's motions for a new trial and in arrest of judgment. Defendant was sentenced to consecutive terms on the remaining two charges for the possession charged in the information and the sale and furnishing charge of the indictment. This appeal is taken from the judgment of conviction, the order denying a new trial and the order denying the motion for arrest of judgment.

On appeal defendant urges that the following prejudicial errors compel a reversal of the judgment.

1. Insufficiency of the evidence as to the sale count charged in the indictment.

2. The trial court submitted both the possession and sale counts of the indictment to the jury and then dismissed the possession count after verdicts had been rendered on both.

3. The trial court instructed the jury that the defendant could be convicted on all offenses charged.

4. The erroneous admission of evidence obtained by illegal search and seizure to prove the possession of heroin charged in the information.

5. Insufficiency of the evidence as to the possession count charged in the information.

As to defendant's first contention, the evidence is entirely circumstantial and amply supports the verdict of the jury. Agent Nickoloff, of the Federal Bureau of Narcotics, testified that on February 20, he first searched informant Howard and ascertained that Howard had no narcotics on his person. He then gave Howard $20 in currency belonging to the United States Government, the serial numbers of which had been recorded. Nickoloff and Howard then drove to the intersection of Fulton and Webster Streets in San Francisco. They were looking for one "Smiley." After parking the car, Howard walked to Fillmore Street and continued walking north. Nickoloff followed Howard and kept him in view continually. Nickoloff watched Howard meet the defendant in Foster's Café. He saw that some object was passed between the two men but could not determine its nature. He then saw the defendant and Howard enter a pool hall and then a barbershop next door to the pool hall. The defendant

went to the rear of the barbershop and disappeared from Nickoloff's view for about 30 seconds to a minute. Howard remained well in view in front of the barbershop. The two men left the barbershop and reentered the pool hall. There, he again observed a meeting of their hands. Howard then left the defendant, rejoined Nickoloff and handed him a small bindle which was later found to contain heroin. Nickoloff and Howard returned to the Bureau of Narcotics Office. Nickoloff again searched Howard and found no funds or narcotics. The defendant was arrested the next day. *People* v. *Richardson,* 152 Cal.App.2d 310 [313 P.2d 651], cited by the defendant, is not applicable here; in that case the police did not witness the transaction and the purchaser was not searched.

■ The trial court did not err in submitting both counts of the indictment to the jury and then dismissing count one after the verdict. Penal Code, section 954, expressly authorizes the prosecution to plead ''different statements of the same offense,'' under separate counts. Penal Code, section 654, provides that a single act or omission may not be punished under more than one theory of criminal liability. Here, the count was dismissed before sentencing. It does not appear that the action of the trial court was erroneous or prejudicial. (*People* v. *Lyons,* 50 Cal.2d 245 at pp. 275-276 [324 P.2d 556].) ■ The same is true of the instruction that the defendant could be convicted of all the offenses charged. (*People* v. *Smith,* 36 Cal.2d 444, 447-448 [224 P.2d 719].)

Defendant's fourth contention is that the evidence introduced to prove the offense charged in the information, possession of heroin on January 18, was obtained by unlawful search and seizure. The facts of that occurrence, as related by the two police officers and Mary Frazer are as follows: About 5 a. m. on January 18, 1957, Officers Engler and Caulfield saw Mary Frazer leave an automobile in front of the New Fillmore Hotel with an unidentified male. She entered the hotel with the man, and after a brief conversation at the desk, the man left alone. Both officers knew Mary Frazer and from past observation and information suspected she was engaging in prostitution. The officers had previously talked to her at another hotel and asked her to cease her activities and leave the area. They saw Mary Frazer leave the hotel and enter a restaurant a few doors from the hotel. Mary Frazer testified that she met the defendant, then un-

known to the police officers, in the restaurant and discussed narcotics with him. She stated she was then a user of heroin and that the defendant had told her he had some good heroin. About 5:30 a. m. she and the defendant left the restaurant and entered the hotel in order to use narcotics. They walked up the hotel stairway without stopping at the desk. The officers followed them, and inquired at the desk about Mary Frazer's room number. They went up to room 133 and listened at the door for two or three minutes. They could hear a conversation but could not discern its content. One of the officers knocked on the door of the room, stated that they were police officers and wanted to come in to talk to her. She testified that after the knock on the door the defendant got up and went over to the sink and told her to wait a minute. About 30 seconds later the officers heard water running. About a minute and a half later, Mary Frazer said "Yes", and opened the door a few inches. On seeing the police officers, she opened the door three-fourths of the way and sat down on the bed which was close to the door. The officers entered and noticed that Mary Frazer was partially disrobed. The defendant, fully dressed, except for his coat, was standing near the wash basin at the rear of the room. The officers talked to Mary Frazer and the defendant for about 15 minutes. Mary Frazer stated she knew the defendant only as "Smiley." Then the defendant reached in his coat which was hanging in a temporary closet at the rear of the room. One of the officers asked the defendant to stay away from the coat until he could examine it. The defendant had been previously patted for weapons but his coat had not been inspected. The officer observed that the defendant who had been calm during the prior period of questioning began to shake and generally appear to be in an agitated and nervous condition. As he stepped toward the defendant, the defendant dropped a number of keys and coins on the floor. The officer looked on the floor and saw a small white article projecting from beneath the defendant's left foot. The defendant's foot appeared to cover the article about three-fourths of the way. The officer picked up the object which turned out to be a small packet of white powder, which was subsequently determined to be heroin. Both the defendant and Mary Frazer denied knowledge of the packet. Both were placed under arrest and the room searched. The contents of a brown toilet kit belonging to the defendant was examined for weapons. The defendant dumped some of the

articles in the kit on the bed. The officers returned the kit to the defendant. The defendant and Mary Frazer were taken to the police station and booked. During the booking the brown toilet kit was examined in detail. A red plastic spoon coated with white powder was found. The powder on the spoon was analyzed and found to contain heroin. Mary Frazer stated that she had not seen the red spoon in the hotel room and that it was not hers.

Defendant argues that the packet and the spoon were obtained as a result of an illegal search and seizure and therefore improperly admitted into evidence. He argues that the entry of the police officers into the hotel room was illegal. ██ It is conceded that the officers did not have either a search or arrest warrant, and that they were following Mary Frazer in the hope of obtaining sufficient evidence of prostitution to arrest her or to talk to her further about her activities. It cannot be questioned that under the circumstances their suspicions were reasonable. (*People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855]; *People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852].) ██ After they knocked on the door and stated their purpose, Mary Frazer opened the door a few inches. Upon seeing the officers, she opened the door further, stepped back and sat down on the bed. Under these circumstances she clearly consented to the entry of the officers. She was the person with proper authority to give consent. There is nothing in the record to indicate that her consent was anything but voluntary. The question of her consent was a question of fact properly left to the trial court. Her expression of assent to the officers and her action in opening the door suggests an affirmative invitation to the officers to enter. (*People* v. *Holland*, 148 Cal.App.2d 933 [307 P.2d 703].)

██ The entry of the officers into the room was made with proper consent and not unlawful. (*People* v. *Burke*, 47 Cal.2d 45 [301 P.2d 241]; *People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Bouchard*, 161 Cal.App. 302 [326 P.2d 646].) Their questioning of defendant and Mary Frazer was reasonable and proper under the circumstances as was the officer's desire to examine the defendant's coat. Once in the room, the officers were not required to close their eyes to readily visible contraband. (*People* v. *Roberts*, 47 Cal.2d 374 [303 P.2d 721]; *People* v. *Bouchard*, 161 Cal.App.2d 302 [326 P.2d 646]; *People* v. *Ambrose*, 155 Cal.App.2d 513 [318 P.2d 181].) The spoon was found in a proper search

made after the arrest. It follows that there was no unlawful search and seizure of the items complained of and that they were properly introduced into evidence.

From what has been said above, it is clear that there is ample evidence to support the judgment of possession.

No prejudicial error appearing in the record before us, the judgment must be affirmed.

Judgment affirmed.

Draper, J., and Martinelli, J. pro tem.,* concurred.

A petition for a rehearing was denied November 14, 1958, and appellant's petition for a hearing by the Supreme Court was denied December 10, 1958.

*Assigned by Chairman of Judicial Council.