[Crim. No. 7690.   Second Dist., Div. Four.   Jan. 9, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ADRIAN CONTRERAS, Defendant and Appellant.

Arthur Lewis and Thomas L. Roquemore for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Louis L. Selby, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged with the crime of possession of a narcotic, marijuana, in violation of section 11530 of the Health and Safety Code. The information further alleged a prior felony conviction, to wit, violation of section 11500 of the Health and Safety Code. Defendant entered a plea of not guilty and denied the prior conviction. Defendant and all counsel waived trial by jury as to the offense charged and the determination of the prior conviction. Pursuant to stipulation, the cause was submitted to the court on the evidence adduced and testimony contained in the transcript of the proceedings had at the preliminary hearing. At the commencement of the trial the judge indicated for the

record that he had read and considered the evidence produced at the preliminary hearing. Defendant was found guilty as charged, and the prior conviction was found to be true. Motion for a new trial and probation were denied and defendant was sentenced to the state prison for the term prescribed by law. Defendant appeals from the judgment and the order denying motion for new trial.

Jose Soto, a police officer, testified he was attached to the central vice detail of the Los Angeles Police Department. On October 28, 1960, he observed Dorothy Molindo and defendant leave a café located on North Broadway in the City of Los Angeles. He had previously booked Miss Molindo for narcotics and prostitution. He followed defendant and Miss Molindo to a hotel on West 8th Street. Upon inquiry the hotel manager advised him the two were occupying room 219. The officer first noticed from a fire escape that the window to the room was closed. He then approached the particular room from the hallway and overheard voices inside. He heard the words, ''Come on, let's go.'' He then heard the squeaking of bedsprings and moans and groans from which he formed the opinion that an act of sexual intercourse was taking place inside the room. He knocked on the door, and in approximately two or three minutes Miss Molindo opened the door. Officer Soto entered the room and observed defendant ''lying on the top of the bed with his pants all the way down to his ankles, his shirt unbuttoned, and he seemed to be going through a fit of some sort.'' At this time he noticed the window in the room to be open, whereas before entering the room he had observed it to have been closed. He left the room and went downstairs. Under the open window he found an outfit similar to those used by narcotics users containing a needle and syringe wrapped in an empty cigarette package.

He then went back to the hotel room and in the course of a search he went through the pockets of a man's coat hanging on the back of a chair and found a brown paper wrapped cigarette. Defendant denied that the cigarette was his but he admitted that the coat belonged to him. The officer asked defendant what he was doing in the room and defendant replied he was having an act of sexual intercourse.

The officer admitted he did not ask defendant or Miss Molindo for permission to search the room. The brown paper cigarette which was found in the pocket of defendant's coat was received in evidence. It was stipulated that a forensic chemist was deemed called and sworn and it was deemed that he testi-

fied that he made an examination of the contents of the cigarette and that in his opinion the cigarette contained a narcotic, marijuana.

Defendant testified in his own behalf stating in part: He had been drinking prior to his arrest; he met Dorothy Molindo in a café and they left the café and went to her hotel room where they engaged in an act of sexual intercourse; after the act of intercourse was completed he was sleepy and tired and he had passed out before the officer entered the room. He denied he had placed the marijuana cigarette in his coat and said he had never seen it before. He stated he was not a user of narcotics and that he had never smoked marijuana.

Before making a determination on the prior conviction, the judge indicated in the record that he was going to refer the matter to the district attorney to see if he would agree to strike the prior conviction. When the trial deputy subsequently indicated that the district attorney would not agree to strike the prior conviction the court expressed its opinion that it considered its hands to be tied, and that it had no discretion but to sentence the defendant to state prison.

■■ Defendant contends that section 11718 of the Health and Safety Code, which provides that the trial court may not dismiss allegations of prior offenses in narcotics cases except on the motion of the district attorney, is unconstitutional as a delegation of an inherently judicial power to a branch of the executive department of the government. During the pendency of this appeal, the Supreme Court of this state upheld the constitutionality of this code section and ruled contrary to the contention of defendant here in *People* v. *Sidener*, 58 Cal. 2d 645, 651-652 [25 Cal.Rptr. 1, 375 P.2d 641].

■■ ■■ Defendant next contends that the entry was without consent and the marijuana cigarette, which was seized and admitted into evidence, was the product of an illegal search. On the issue of probable cause, Officer Soto testified he had personal knowledge of Miss Molindo's reputation for prostitution and use of narcotics and had booked her before for both offenses. The voices and sounds he heard emanating from the room which he described led him to believe, as an experienced vice officer, that an act of sexual intercourse was taking place within the room. He knocked on the door, announced he was a police officer and entered when Miss Molindo opened the door. The police officer here, as was the case in *People* v. *Smyre*, 164 Cal.App.2d 218, 224 [330 P.2d 489], had been following the woman in the case with the view of

obtaining sufficient evidence of prostitution to arrest her or to talk to her further about her activities. Here, as in the *Smyre* case, the officer's suspicions were reasonable. True, the officer here did not have sufficient evidence as he stood listening outside the door upon which to make an arrest, but he did have grounds to make further inquiry. There is no evidence of any force used in entering. Neither is there any evidence that Miss Molindo objected to the officer entering the room.

It is conceded the officer had no search warrant and under these circumstances the burden is upon the prosecution to show that his entry into the room was upon invitation of one of the occupants or with the consent of such occupant, express or implied. Here, there was no express consent.

Was the conduct of Miss Molindo such as to imply or infer consent? The trial court answered this question in the affirmative and, since the evidence warranted such inference, his determination is binding on this court. The court stated in *People* v. *Smyre, supra*, 164 Cal.App.2d 218, 224, under somewhat similar circumstances: "After they knocked on the door and stated their purpose, Mary Frazer opened the door a few inches. Upon seeing the officers, she opened the door further, stepped back and sat down on the bed. Under these circumstances she clearly consented to the entry of the officers. She was the person with proper authority to give consent. There is nothing in the record to indicate that her consent was anything but voluntary. The question of her consent was a question of fact properly left to the trial court. Her expression of assent to the officers and her action in opening the door suggests an affirmative invitation to the officers to enter. (*People* v. *Holland*, 148 Cal.App.2d 933 [307 P.2d 703].)"

In *People* v. *Holland, supra*, the entry by the officers was made under similar circumstances. In both of the last cited cases the implications of consent were stronger than in the instant case. Here, all we have is the simple statement that Miss Molindo opened the door and the officer entered. In *Smyre, supra*, 164 Cal.App.2d 218, 224: "Upon seeing the officers, she opened the door further, stepped back and sat down on the bed." In *Holland, supra*, 148 Cal.App.2d 933, 935: ". . . he opened the door about three-quarters of the way and stepped back from the door; the officers entered."

In *People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852], the court held with respect to an entry under somewhat similar circumstances: "All that appears is that four officers went to defendant's home, identified themselves, and were admitted by de-

fendant's mother. Within approximately a minute of their arrival they asked defendant if she had any narcotics, and all of the evidence was then voluntarily produced by the two women. Under these circumstances, to hold as a matter of law that the evidence was produced in response to an unlawful assertion of authority would seriously hamper officers in the reasonable performance of their duties. Thus, it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. Such inquiries, although courteously made and not accompanied with any assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority.

''We are not unmindful of the fact that the appearance of four officers at the door may be a disturbing experience, and that a request to enter made to a distraught or timid woman might under certain circumstances carry with it an implied assertion of authority that the occupant should not be expected to resist.'' (P. 754.)

In the last cited case, the court further held: ''Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.'' (45 Cal.2d 751, 753.)

Having determined that the entry was entirely legal the actions of the officer following the entry were likewise entirely justified. Upon entering the room and observing the open window, which a few minutes before had been closed, his suspicions were aroused. Following this clue, he discovered the narcotic kit outside of the hotel underneath the open window. He was justified in believing that the narcotic kit had probably been thrown from the room. At this point, certainly, there was probably cause to justify the search in the room which resulted in the discovery of the marijuana cigarette which was seized and admitted into evidence.

We now turn to the question as to whether there was any substantial evidence to warrant a finding that defendant was guilty of possession of the marijuana cigarette found in his coat pocket. The substantial evidence rule requires that there be some substantial proof of the essentials which the law requires in a particular case (*Estate of Teed*, 112 Cal.App.2d 638, 644 [247 P.2d 54]). In *People* v. *Gory*, 28 Cal.2d 450 [170

P.2d 433], a prosecution for possession of marijuana, the court stated at page 454: "... *defendant's awareness of the presence* of the object [is] a basic element of the offense of possession. It has been repeatedly held that the term 'possession' as used in the State Poison Act (now embraced in the Health and Safety Code) means an 'immediate and exclusive possession and one under the dominion and control of defendant.' [Citations.] Thus it was said in *People* v. *Noland,* 61 Cal.App.2d 364, 366 [143 P.2d 86] : 'A person has "possession" of a chattel who has physical control with the intent to exercise such control, or, having had such physical control, has not abandoned it and no other person has obtained possession. (Rest., Torts, § 216.)' But knowledge of the *existence* of the object is essential to 'physical control thereof with the intent to exercise such control' and such knowledge must necessarily precede the intent to exercise, or the exercise of, such control. [Citations.] The materiality of such issue as a matter of defense has been recognized in numerous instances by our appellate courts. Thus, in *People* v. *Randolph,* 133 Cal.App. 2d 192 [23 P.2d 777], the effect of the defendant's denial of 'having any knowledge of [the] presence of 'four bindles of morphine . . . found sewed in the lining of [his] coat' was discussed at page 196: 'The act makes it unlawful for any person to have in his possession any opium, excepting upon the written order or prescription of a physician, dentist or veterinary surgeon, licensed to practice in this state. . . . Such defense [lack of knowledge of the presence of the morphine] merely created a conflict with the *prima facie* case made out by the People showing that such morphine was in defendant's possession. Neither intent nor knowledge is an element of this offense. The mere possession is a violation of the act [citing authority]. The only perfect defense is a valid prescription under the act. Any other defense is for the consideration of the judge or jury, as the case may be; . . .' See also *People* v. *Charley Quong,* 5 Cal.App.2d 137, 139 [42 P.2d 386] ; *People* v. *Gin Shue,* 58 Cal.App.2d 625, 628 [137 P.2d 742] ; and *People* v. *Sweeney,* 66 Cal.App.2d 855, 859-860 [153 P.2d 371]. . . . Matters tending to establish defendant's guilt are the fact that the marijuana was found in his box and the circumstance of his silence in the face of Officer Huber's accusation in the camp's bunkhouse. (8 Cal.Jur. 103, and cases there cited.) Matters tending to establish defendant's innocence are the fact that the box was unlocked, showing that the marijuana conceivably could have been placed there by some

one other than defendant, and defendant's denial at the trial that he had ever seen the 'stuff' prior to its discovery by the officers. Thus, this may be said to be a 'close case' on the record before us. It is readily distinguishable from those cases where the evidence includes express admissions and statements made by defendant with respect to the possession of narcotics, which supplied the final link in the chain of circumstances connecting defendant with the offense charged against him. [Citations.]''

Here, as in *People* v. *Gory, supra,* the defendant took the stand and denied knowledge of the presence of the marijuana. In fact, defendant here denied ever smoking marijuana. Defendant acknowledged that at the time of his former conviction he had been a user of heroin. His conviction concerned heroin.

Whereas in *People* v. *Gory, supra,* in addition to finding the marijuana in defendant's box there was the circumstance of defendant's silence in the face of the officer's first accusing him of possession, here the defendant maintained he had no knowledge of the presence of the cigarette in his coat jacket although readily admitting the coat was his. Thus, the only evidence upon which the determination of guilt rests is the finding of the marijuana in a coat which defendant admitted was his. From this evidence the trial court could and did conclude that defendant had knowledge of the existence of the marijuana in his coat pocket.

This was the determination of a factual issue based upon substantial evidence and is therefore binding on this court. The judgment of conviction of defendant is affirmed and the purported appeal from the order denying motion for a new trial is dismissed.

Burke, P. J., and Ford, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.