[Crim. No. 8913.    Second Dist., Div. Three.    Aug. 19, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL SUAREZ COBLENTZ, Defendant and Appellant.

Paul Suarez Coblentz, in pro. per., and Richard A. Walton, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

FILES, J.—This is a prosecution for possession of heroin for sale, in violation of Health and Safety Code, section

11500.5. Defendant personally and by his attorney waived a jury trial. It was then stipulated that the case be submitted to the trial court upon the transcript of the preliminary hearing. No evidence was offered on behalf of the defendant, either at the preliminary or at the trial. The court found defendant guilty. He has appealed from the judgment and has attempted to appeal from the order denying his motion for a new trial, which is a nonappealable order. (Pen. Code, § 1237.)

The sole point argued by defendant on this appeal is that the People's case is based upon an illegal search. The Attorney General points out that defendant did not object to the admission of any of the evidence received against him at the trial. The deputy public defender who represented defendant at the preliminary hearing did make timely objections based upon the claimed illegality of the search, which objections were overruled by the magistrate. The attorney chosen by defendant to represent him at the trial stipulated that all this evidence be received, without any exception or reservation or objection. This stipulation constituted a waiver of any objection which defendant might have had, and eliminated any basis for claiming on appeal that the trial court committed error. (*People* v. *Richardson,* 51 Cal.2d 445, 447 [334 P.2d 573]; *People* v. *Dessauer,* 38 Cal.2d 547, 552 [241 P.2d 238]; *People* v. *Brittain,* 149 Cal.App.2d 201, 203 [308 P.2d 38].)

Defendant requested and this court allowed an augmentation of the record to show that after the case was submitted in the trial court, defendant's trial counsel made an oral argument that the search was illegal. It thus appears that defendant did not intend to waive his objection in the trial court, but that his counsel overlooked making it at the proper time. Evidently the trial court considered and passed upon the legality of the search. Since the issue is an important one, this court will consider it on its merits.

The circumstances leading to the discovery of the heroin are related in the testimony of Los Angeles Police Officer Wesley, who was stipulated to be an expert on the use of narcotics and the paraphernalia used in the administration of narcotics. Officer Wesley and his partner had been investigating defendant for approximately two weeks. The record does not indicate what, if anything, they had learned before the day of arrest except that defendant had prior convictions for possession of heroin and for sale of heroin. On August 9, 1962, the day of the arrest, the officers learned that defendant

was living with a woman named Garcia in a small hotel in downtown Los Angeles. The officers knew that Mrs. Garcia's record included several narcotics convictions. About 8:30 p. m. that day the officers went to the hotel. They recognized Mrs. Garcia seated in the lobby. They asked her name and she told them. They observed that her left forearm, which was exposed, showed numerous needle puncture marks. They asked her if she was using narcotics and she replied, "Not very much." She handed her purse to one of the officers and said, "Search it." The purse was searched, with negative results. She was asked if she had narcotics in her room. She said she was living in Room 9 and that the officers "may go ahead and search the room."

The officers then made inquiry at the hotel desk, where they were shown a registration card indicating that Mr. and Mrs. Paul Suarez had registered in Room 9 on August 8. The officers were aware that " Suarez" is defendant's middle name. Officer Wesley asked the room clerk if Mrs. Garcia and "Paul Suarez" had both registered at the same time as man and wife, and the clerk said "Yes." Mrs. Garcia then gave the officers her key, and the group proceeded to the room.

In the top dresser drawer the officers found a plastic bag containing an eyedropper and a hypodermic needle, another plastic bag which contained some measuring spoons, a can of milk sugar, a plastic bag containing some multicolored balloons and a funnel.

The officers asked Mrs. Garcia about these things and she replied: "That's all you'll find. You won't find any junk." Officer Wesley asked about the milk sugar and she responded, "I use that for myself. I like to sweeten myself."

About this time there was a knock on the door. The officers opened it and recognized defendant. Officer Wesley asked his name and he stated, "Paul Coblen[t]z." The officer asked him where he lived and he replied, "In this room." Thereupon the officers arrested defendant and searched him. Under his clothing were two containers of white powder. Subsequent laboratory analysis established that this powder was heroin, weighing 17 grams.

After defendant had been taken to the police building he had a conversation, freely and voluntarily, with the officers in which he said among other things: "You have got me cold. . . . I get the stuff without putting any money out and then I give it to different people around town in order to let them sample it and I can thereby get more customers from [sic]

my supplier." He stated that he intended to get rid of most of it in the area of Second and Hill, where he had once before been arrested for the sale of narcotics.

Officer Wesley further testified regarding the use of the items found in defendant's room before the arrest: The Number 26 hypodermic needle and the eyedropper are the means by which narcotic users inject the narcotic into the veins. The small wires, found with the needle, are used to clean the needle. The balloons found in another package are normally used by people who sell narcotics. The practice is to dilute the heroin by mixing it with milk sugar. The mixture is then packaged in balloons for delivery to the customers. The small funnel which was found in the drawer with the milk sugar and the balloons is used to facilitate pouring the powder into the balloons.

One of the two spoons found in the drawer is a quarter-teaspoon. That size is used for measuring. The other spoon is a teaspoon and it is blackened on the bottom. This spoon is used for cooking the heroin with water by holding the spoon over a lighted match.

█ Defendant does not argue the propriety of the officers' accepting Mrs. Garcia's invitation to search the room. She appeared to be a cooccupant of the premises, and the record indicates that her consent was genuine. This evidence establishes the legality of the search by which the paraphernalia in the dresser was found. (*People* v. *Gorg*, 45 Cal.2d 776, 783 [291 P.2d 469].) Knowing the kind of paraphernalia which was kept in the room, and knowing the defendant's history of narcotics violations, the officers had reasonable cause to arrest defendant when he appeared in the doorway and stated that he lived in that room.

Penal Code, section 836, authorizes a peace officer to make an arrest without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence, or whenever he has reasonable cause to believe that the person to be arrested has committed a felony. █ "Reasonable cause [to arrest] has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle*, 53 Cal.2d 407, 412 [348 P.2d 577].)

█ Where the defendant was living with his purported wife in a single room, it is reasonable to infer that he was in

joint possession of narcotics paraphernalia found in the top drawer of the dresser. (Cf. *People* v. *Prezas,* 195 Cal.App. 2d 850 [16 Cal.Rptr. 274].) ▮ When the defendant arrived at the room and identified himself as the man who lived there, the officers had reasonable cause to believe that he possessed the hypodermic needle in violation of Health and Safety Code, section 11555.* The fact that the needle was with an eyedropper, so commonly used by heroin addicts rather than a regular syringe, and the presence of the measuring spoon and the blackened teaspoon were circumstantial evidence supporting the reasonable belief that defendant possessed the needle for the purpose of injecting heroin unlawfully. (*People* v. *Williams,* 218 Cal.App.2d 86, 91 [32 Cal. Rptr. 277].)

▮ Moreover, any intelligent person, knowing what these officers knew, would "believe and conscientiously entertain an honest and strong suspicion" that a former narcotics seller who kept milk sugar, a funnel, a measuring spoon and a supply of balloons in his dresser drawer along with his hypodermic needle and cooking teaspoon was back in business. The balloons and milk sugar as well as the other paraphernalia are so commonly associated with the narcotic traffic that the inference is most compelling, absent some circumstances which would indicate some other use for this particular collection of drug dealers' equipment. (Cf. *People* v. *Torres,* 56 Cal.2d 864, 867 [17 Cal.Rptr. 495, 366 P.2d 823].) Defendant's prior conviction, which was known to the officers, had a bearing upon the reasonableness of the officers' suspicions. Mrs. Garcia's flippant statement when asked about the milk sugar, "I like to sweeten myself," was hardly calculated to allay suspicion.

Even though the officers did not find heroin on the premises, the aggregation of equipment which apparently had no other use than for cutting, packaging and administering heroin supported a strong and reasonable suspicion that defendant had recently possessed and sold the drug. ▮ In order to justify an arrest, it is not necessary that the officer have a complete case to support a conviction at the time of the arrest. (Cf. *People* v. *Rios,* 46 Cal.2d 297 [294 P.2d 39].)

---

*Health and Safety Code, section 11555: "It is unlawful to possess an opium pipe or any device, contrivance, instrument or paraphernalia used for unlawfully injecting or smoking a narcotic." (See also Bus. & Prof. Code, § 4143.)

Defendant's criticism of the officers for failing to seek a warrant is unjustified. Nothing in the record indicates that the officers had any basis for seeking a warrant until Mrs. Garcia disclosed to them the contents of the dresser drawer. Defendant appeared shortly afterward and identified himself as the occupant of the room and, inferentially, as the possessor of the personal effects therein. The officers at that point had probable cause to arrest him, and did so. The purpose of arresting a defendant before any formal complaint has been issued is to prevent his escape. Defendant was apparently a transient. He "lived" in a hotel room, which he had checked into only the day before. The officers were entirely justified in believing that this defendant, knowing that the nature of his activities and the place from which he operated had been discovered, would not wait there patiently for the issuance of a warrant.

The evidence in this case support the finding of guilty of the offense of possession for the purpose of sale. The quantity of heroin found on defendant's person—17 grams—plus the balloons, the funnel and the milk sugar, support the inference that defendant intended to cut, repackage and sell at least a portion of what he had.

The purported appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1964. Mosk, J., did not participate therein.