[Crim. No. 11771.   Second Dist., Div. Four.   Feb. 23, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER THOMAS FOSTER, Defendant and Appellant.

Charles M. Berg, under appointment by the Court of Appeal, and Donald F. Roeschke for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant appeals from the judgment (order granting probation) following his conviction in a trial by the court of possession of marijuana for sale (Health & Saf. Code, § 11530.5).

The facts are as follows: Charter Savings and Loan Association, as the owner of an apartment house located at 336 West Palm, in the City of Compton, employed Richard Manning as an agent to inspect the premises and to collect rents. Manning had keys to all of the apartments. On his visits to the apartment house, he observed that defendant resided in Apartment C and that defendant also had keys to all apartments. There was a manager's sign on the door of Apartment C.

On June 22, 1965, at about 11 a.m., Manning made one of his visits to the apartment house. Defendant was not on the premises at the time. Manning entered Apartment B to inspect it. The apartment was vacant except for two suitcase-type bags in the bedroom. He had visited this apartment about a month before and there was nothing in it at that time. He opened the bags and found they contained numerous brown paper sacks, sealed with scotch tape, and also what appeared to be bricks wrapped in red paper or cellophane tape. He removed one of the paper bags, examined the contents and discovered what appeared to be marijuana. He immediately took this paper bag to the Compton police station and gave it to Officer Pranin.

About 20 minutes later, Officers Pranin and Walker went with Manning back to the vicinity of the apartment house. While the officers waited nearby, Manning went up and talked to defendant. After discussing with defendant whether the vacant apartments were ready for occupancy, he and defendant walked over to Apartment B and, using defendant's keys, entered the apartment. Manning walked into the kitchen to check it and observed defendant head toward the bedroom. After waiting a few seconds, Manning followed defendant to the bedroom. He saw defendant standing in front of the closet. It appeared as though he had just closed the closet

with his left hand. As Manning approached the closet, defendant said, "It's clean; there is nothing there." Manning noticed that the two suitcases he had seen were no longer visible.

Manning went outside, met the officers and the three approached defendant who was then standing outside. Officer Pranin told defendant they were investigating contraband suspected to be on the premises and asked him if he would give them permission to go into one of the apartments. Defendant replied that he would not. The officer then asked Manning if he would give them permission to enter. Manning said they had permission.

Manning, defendant and the two officers then entered Apartment B. Officer Pranin walked to the closet in the bedroom and inside found the two suitcases Manning had previously observed. He opened them and found several folded bags sealed with cellophane tape. The bags were opened in defendant's presence. They contained marijuana in brick form.

Officer Pranin asked defendant if he knew anything about the bags, and defendant replied he did not; that they probably belonged to a person named "Delgado." Defendant was advised that he was being arrested for suspicion of possession of marijuana and was further advised of his constitutional rights. After they left Apartment B, the officers asked defendant's permission to search Apartment C (where defendant resided). Defendant replied, "No, not without a search warrant."

As they were driving to the police station Officer Pranin noticed defendant was "laughing and chuckling somewhat." Defendant was asked "What's so funny?" He replied "You'll find out." He then said, "If we only knew what we had missed." He further stated "If some square wouldn't give us information, we wouldn't find out anything."

Later the same day Officer Pranin obtained a warrant to search Apartment C and took defendant back to the apartment house. He gave defendant a copy of the search warrant and entered Apartment C. A search revealed scotch tape and a scale in the kitchen; paper bags, like those found in the suitcases, several of which contained marijuana debris; and what appeared to be marijuana seeds on a rug.

The items found at the apartment house were admitted into evidence against defendant. It was stipulated that Deputy Sheriff Burley was an expert in the manner and means by

which marijuana is sold, and that he had examined the bags and contents, and formed the opinion that, from the manner of packaging and the quantity found, the marijuana was held for the purpose of sale.

Defendant testified denying any knowledge of the narcotics found; several persons had visited his apartment during the month prior to his arrest; these persons had keys to his apartment; Delgado had kept a key to Apartment B when he moved out; he (defendant) was arrested before he and the officers entered Apartment B; he was not advised of his constitutional rights; he did not recall having any conversation with the officers as he was being transported to the police station.

■ Defendant contends the evidence is insufficient to support his conviction because no showing is made that he had either knowledge of, or control over, the contraband. The evidence, summarized above, plainly refutes any such contention. All of the elements of the crime were clearly established.

■ The contention is made that the evidence found in the apartment house and admitted against defendant at the trial is the product of an illegal search and seizure. This contention also lacks merit. The officers' entry into the vacant apartment where they found the two bags of marijuana was shown to have been with the consent of one authorized to consent to such entry.

Defendant suggests that the affidavit filed in support of the warrant authorizing the search of his apartment did not indicate probable cause for the search and was not sufficiently specific to support the issuance of the warrant. At the trial defendant moved to quash the warrant. Testimony was offered and the motion was denied.

Penal Code section 1525 provides: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched."

■ Certified copies of the search warrant and supporting affidavit are included in the record on this appeal. The basis for the warrant is clearly stated in the affidavit; defendant is named; the specific place to be searched is described; as is the property to be seized. The requirements of the Penal Code were clearly met. (See *Saunders* v. *Municipal Court,* 240 Cal.App.2d 563, 565 [49 Cal.Rptr. 763].)

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.