[Crim. No. 4112.   Third Dist.   May 11, 1967.]

In re PAUL SUAREZ COBLENTZ on Habeas Corpus.

George Lagomarsino, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

REGAN, J.—Petitioner, charged with a violation of section 11500.5 of the Health and Safety Code (possession of a narcotic, other than marijuana, for purpose of sale) and with two prior felonies, waived a jury trial and submitted the cause on the transcript of the preliminary examination. The trial court found petitioner guilty as charged and found one prior felony to be true. The judgment was affirmed on appeal. After numerous petitions and motions were denied, this court issued its order to show cause seeking a determination of petitioner's contention that his statements made to the police after his arrest and admitted into evidence were in derogation

of his constitutional rights enunciated in *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

At the preliminary hearing Donald C. Wesley, a Los Angeles police officer assigned to the narcotics division, testified as follows: He and his partner, Sergeant Walker, had petitioner (defendant) and codefendant, Gloria Garcia, under investigation for approximately two weeks, when, on August 9, 1962, at approximately 8:30 p.m., they, accompanied by two customs agents, went to the Arthur Hotel, located in Los Angeles, where defendants were staying. They saw Gloria seated in the lobby, spoke to her, observed numerous needle puncture marks on her left wrist and forearm and obtained her consent to search her purse and the room she and petitioner were sharing.

In the top dresser drawer they found a plastic bag containing an eyedropper and a hypodermic needle, another plastic bag containing some measuring spoons and a can of milk sugar and a third plastic bag containing multicolored balloons and a funnel. While the officers were in the room there was a knock on the door. Officer Wesley answered the door and recognized petitioner. After petitioner identified himself and told the officers that he lived in the room, he was placed under arrest and brought into the room. Petitioner was asked to remove his shirt and trousers, which he did. In this state of undress petitioner started to sit down when a condom, containing what was later identified as heroin, dropped from the leg of his shorts. Wesley asked petitioner to stand up and a paper cup containing a second condom of heroin dropped from petitioner's shorts. When petitioner was asked about these items he stated: "You have got me cold."

An hour later, at approximately 9:45 p.m., the two police officers and the two customs agents had a conversation with petitioner at the police building in the narcotics division office.

Wesley testified that at this time petitioner stated: "You have got me cold. I had this stuff on me. I had just gone out to get the stuff from a guy by the name of Tony Martinez." He further stated, "I get the stuff without putting any money out and then I give it to different people around town in order to let them sample it and I can thereby get more customers from [*sic*] my supplier." Later he stated that codefendant, Garcia, gave him money with which to buy

narcotics, and that he intended to get rid of most of it in the area of Second and Hill and Hope Streets, where he had once been arrested for the sale of narcotics.

Although Wesley testified that these statements were freely and voluntarily made, there is no testimony to the effect that there was compliance as required by the *Escobedo-Dorado* decisions that petitioner be advised of his constitutional rights to counsel and to remain silent.

We do not deal here with multiple confessions. The statement made by petitioner in the hotel room when the containers of heroin dropped from his clothes, to wit, ''You have got me cold,'' constitutes at most an admission of possession of the narcotic. Petitioner, however, was charged with possession of a narcotic *for sale.* There was no admission of the purpose of the possession. The offense under section 11500.5 of the Health and Safety Code necessarily requires proof of the purpose of the possession. (2 Witkin, Cal. Crimes (1963) § 686, p. 630.) All of the necessary elements to establish his guilt were present in his second statement at police headquarters.

In *People* v. *Charles,* 66 Cal.2d 330 [57 Cal.Rptr. 745, 425 P.2d 545], at pages 340-342, the court said: ''In this situation, *People* v. *Luker* (1965) 63 Cal.2d 464 [47 Cal.Rptr. 209, 407 P.2d 9], and *People* v. *Stockman* (1965) 63 Cal.2d 494 [47 Cal.Rptr. 365, 407 P.2d 277], hold that the prosecution bears the burden of proving that the statement in question was not the fruit of a forbidden interrogation.[14] [Our footnote 1.] The prosecution has not discharged that burden here. Surely we cannot dissect the interrogation of defendant Boddie in order to declare that it began with a series of purely investigatory questions by the police and ended with a

[1]''In *Luker* we said: 'When a record . . . reveals that [a] defendant has been arrested [and] has thereafter been questioned about the offense which occasioned the arrest, and [when] no evidence indicates that the statements are in the nature of spontaneous disclosures, we do not presume that . . . a process of interrogations [designed to elicit incriminating statements] has not been undertaken.' (*People* v. *Luker,* supra, 63 Cal.2d 464, 473-474.) Again, in *Stockman,* we said: 'It may reasonably be assumed . . . that an interrogation which does elicit incriminating statements was conducted by the police for that purpose, at least in part, and . . . the burden should [thus] be on the prosecution to show that [such] statements were the result of something other than a ''process of interrogations that lends itself to eliciting incriminating statements. . . .'' ' (*People* v. *Stockman,* supra, 63 Cal.2d 494, 498-499.) (See also *People* v. *Talley,* supra, 65 Cal.2d 830, 839-840 [56 Cal. Rptr. 492, 423 P.2d 564]; cf. *People* v. *Davis,* ante, [66 Cal.2d] p. 175 [57 Cal.Rptr. 130, 424 P.2d 682].) '' (*People* v. *Charles,* supra, at p. 341 [57 Cal.Rptr. 745, 425 P.2d 545].)

sequence of entirely spontaneous statements by the accused. We face a hiatus in the record; our decisions forbid us to fill it with our purely speculative surmises. Nor can we properly engage in legal surgery to select from this incomplete account excerpts which might be viewed in isolation as fragments of a 'spontaneous confession' of Boddie's guilt.

"We therefore conclude that, so far as the record shows, Boddie's conviction rested upon a confession obtained in violation of *Escobedo* and *Dorado*; since the erroneous admission of a confession is necessarily prejudicial (*People* v. *Schader, supra,* 62 Cal.2d 716, 728-731 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Dorado, supra,* 62 Cal.2d 338, 356; *People* v. *Parham, supra,* 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001]; see *Chapman* v. *California, supra,* 386 U.S. 18, 23 & fn. 8 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 827-828] (dictum)), Boddie's conviction must be reversed."

The record does not disclose the length of the interrogation of petitioner at the police building nor the nature of the questions asked. Significant, however, is the fact that petitioner and his codefendant had been under investigation by the police for two weeks prior to his arrest. The questioning was in the presence of two police officers and two customs agents; the police knew petitioner had prior convictions for the possession and sale of heroin; narcotics paraphernalia was found in petitioner's room; and the police had knowledge petitioner had possession of and had been carrying narcotics on his person.

We hold that the trial court committed reversible error in admitting into evidence petitioner's extrajudicial statement; the prosecution failed to show that the statement was not obtained in violation of petitioner's constitutional rights enunciated in *Escobedo* and *Dorado,* in that he was not advised of his rights to counsel and to remain silent.[2] (See *Carnley* v. *Cochran,* 369 U.S. 506 [8 L.Ed.2d 70, 82 S.Ct. 884]; *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97].)

The record demonstrates that the investigation had "begun

---

[2]Petitioner's trial took place in October 1962, and the trial court stated it read and considered the entire preliminary transcript. The trial was after the decision in *Escobedo* but before the United States Supreme Court decided *Miranda* v. *Arizona* (June 13, 1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. In adjudicating petitioner's contention we therefore apply the *Escobedo-Dorado* principles, but not the more stringent *Miranda* rules. (*People* v. *Rollins* (1967) 65 Cal.2d 681, 691, 692 [56 Cal.Rptr. 293, 423 P.2d 221].)

to focus'' on petitioner and that he was in custody when the police interrogation produced his statement. It is also clear that the second statement given at police headquarters is in fact a confession of guilt. In *People* v. *Arnold* (April 24, 1967) 66 Cal.2d 438, 444 [58 Cal.Rptr. 115, 426 P.2d 515], the Supreme Court states:

''*Escobedo* v. *Illinois, supra,* 378 U.S. 478, and *People* v. *Dorado, supra,* 62 Cal.2d 338, require that a suspect be advised of his right to counsel and his right to remain silent once the accusatory or critical stage had been reached. In *People* v. *Dorado, supra,* 62 Cal.2d 338, at page 353, we listed the factors which coalesced to signal the advent of the accusatory state: '(1) [T]he investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect[;] (2) the suspect was in custody [;] (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements. . . .' ''

The judgment in petitioner's case was not final until August 19, 1964, which was later than the date of the *Escobedo* decision, to wit, June 22, 1964. In *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221], the California Supreme Court held that the principles set forth in *Escobedo* v. *Illinois, supra,* and *People* v. *Dorado, supra,* are to be applied (as enunciated in *In re Lopez,* 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380]) to any case where the judgment of conviction was not final before June 22, 1964, the date of the *Escobedo* decision.

''Having concluded that defendant's confession was inadmissible, we must reverse the instant conviction, since the erroneous admission of a confession is necessarily prejudicial. (*People* v. *Schader, supra,* 62 Cal.2d 716, 728-731; *People* v. *Dorado, supra,* 62 Cal.2d 338, 356; *People* v. *Parham* (1963) 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001].)'' (*People* v. *Rollins,* 65 Cal.2d 681, 693 [56 Cal.Rptr. 293, 423 P.2d 221].)

The writ is granted and the judgment and sentence for violation of section 11500.5 of the Health and Safety Code is set aside. Petitioner is remanded to the custody of the Superior Court of Los Angeles County for a new trial.

Pierce, P. J., and Friedman, J., concurred.