[Crim. No. 15303.   Second Dist., Div. One.   Dec. 12, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ANTHONY DE LA TORRE, Defendant and Appellant.

Virgil V. Becker for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Salvador S. Alvarado was charged in three counts and Fred Gonzales Escandon in one with the sale of marijuana (§ 11531, Health & Saf. Code); Henry Gonzales Escandon was charged with possession of marijuana (§ 11531, Health & Saf. Code) and defendant, in count IV, with possession for sale of marijuana (§ 11530.5, Health & Saf. Code). A motion under section 995, Penal Code, was granted as to Fred Escandon. The cause was submitted on the transcript of the testimony taken at the preliminary hearing. All were found guilty as charged; defendant De La Torre appeals from the judgment.

On December 23, 1966, and January 9, 1967, State Narcotic Agent Provencio made purchases of marijuana from Alvarado. On January 19, 1967, around 7 p.m. pursuant to a prior arrangement with him, the agent met Alvarado at the corner of Anaheim and Wilmington; Alvarado entered his car and said, "I have to wait for awhile as there is somebody else that is going to pick up some marijuana, and I might as well wait for him, and we will do it together." (While objection to various statements ran to other counts none was made to this statement in count IV, thus it is part of the evidence in this case.) The agent looked up and noticed a window in an apartment building at 724 Wilmington and a person looking at

them through the window. In five minutes pursuant to Alvarado's directions, the agent drove to the rear of the building and parked and they entered apartment 5 at 724 Wilmington. Fred Escandon was the only occupant when they arrived. Alvarado gave the agent four brick-like packages (marijuana) in exchange for $400 and his promise to return the next day with an additional $40. At this time defendant knocked and entered the room; Alvarado introduced the agent to the defendant and indicated to him that defendant was the man he was talking about; he told him he was a very good friend. Provencio told Alvarado he would see him the next day concerning the $40 balance he owed him for one of the kilos of marijuana and left.

During the foregoing Officer Sanchez had Agent Provencio under surveillance; he saw Provencio and Alvarado meet and enter the apartment on Wilmington. He also saw defendant arrive empty handed and enter apartment 5. No one else entered the apartment during that time. He observed the agent leave the apartment around 7:25 p.m. carrying what appeared to be a large bag and drive away; after this he received a radio communication from Provencio advising him that Tony would soon come out of the apartment with some marijuana. He waited and saw defendant leave the apartment carrying a large brown bag similar to the one carried by the agent, and enter the car; he approached defendant, identified himself as a police officer, noting what appeared to be a kilo-type object in the bag which defendant had placed on the passenger side, and arrested him. Officer Sanchez fully advised defendant of his constitutional rights and defendant said he understood them, then stated, "My wife don't know about my dealing. She is going to give me hell."

Officer Sanchez is an expert and had extensive experience in the field of narcotics, and has had an opportunity to observe the methods of packaging marijuana, both in small quantities and bulk; from the method of packaging reflected in the bag in defendant's possession, the officer formed the opinion that the marijuana was held for purpose of sale; the method of packaging is a common method used by large wholesalers of marijuana and the paper is a coarse paper commonly used in Mexico for packaging the narcotic. A physical and chemical examination of the contents of the bag revealed it contained three blocks of marijuana weighing 2,455 grams.

Defendant testified that Alvarado called him at his home asking for a ride; he went to Alvarado's apartment and was introduced to a man, then walked out with Alvarado; Alvar-

ado gave him a package to hold and said he forgot some money upstairs; he went to his car with the package at which time the officers came; he could not see what was in the package, did not know what was in it and had no idea what was in it and never knew Alvarado was under suspicion for anything to do with marijuana or narcotics.

The sole contention is the insufficiency of the evidence to support the judgment. Appellant claims there is no proof that he was aware of the marijuana in his possession or the narcotic nature of the substance or that the narcotic in his possession was held for the purpose of sale.

■ "Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic. (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) The foregoing elements may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. (*People* v. *Jackson,* 198 Cal.App.2d 698, 704 [18 Cal.Rptr. 214].) And finally when the sufficiency of the evidence is challenged an appellate court must affirm if the record contains substantial evidence of all elements of the crime. (*People* v. *Contreras,* 211 Cal.App.2d 641, 646 [27 Cal.Rptr. 619].)" (*People* v. *Groom,* 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359].)

It is undisputed that defendant had the package of marijuana in his possession; he admitted that Alvarado gave him the package to hold and he went with it to his car. ■ The only question is whether the evidence establishes that defendant knew the substance in the package was marijuana and its narcotic character. Knowing possession of narcotics may be inferred from circumstances such as "the conduct of the parties, admissions or contradictory statements and explanations" (*People* v. *Foster,* 115 Cal.App.2d 866, 868 [253 P.2d 50]; *People* v. *Weathers,* 162 Cal.App.2d 545. 547 [328 P.2d 222]; *People* v. *Rodriguez,* 151 Cal.App.2d 598, 601 [312 P.2d 272]), defendant's use of terms describing the narcotic— "weed" (*People* v. *Jackson,* 198 Cal.App.2d 698, 706 [18 Cal.Rptr. 214]), "joint" (*People* v. *Groom,* 60 Cal.2d 694, 697 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Williams,* 202 Cal.App.2d 387, 395 [20 Cal.Rptr. 740]) or defendant's "peculiar behavior" (*People* v. *Janisse,* 204 Cal.App.2d 829, 832 [22 Cal.Rptr. 830]). Shortly before going to the apartment Alvarado alluded to someone else who was going to pick

up some marijuana for whom he would wait so they could "do it together"; a few minutes later he and the agent entered apartment 5 after which defendant came in and was introduced to him by Alvarado as the man he was talking about and a "very good friend." When defendant entered the apartment he carried nothing; the agent was holding the sack of marijuana and in defendant's presence told Alvarado he would see him the next day about the $40 balance he owed for one of the kilos of marijuana; when defendant left he too was carrying a sack—similar to that carried from the apartment by Provencio; defendant left the apartment alone and carried the sack to his car and laid it on the passenger's seat; after being arrested defendant told the officer that his wife didn't know about his "dealing." The foregoing supports the reasonable inference that defendant was the man Alvarado referred to as a "very good friend" who was "going to pick up some marijuana" with whom he would "do it together" and that defendant went to the apartment for that purpose; and that defendant knew of the narcotic nature of the substance in the package.

■ Appellant argues that there is no proof that he ever sold or attempted to sell narcotics, thus it was not established that the marijuana was possessed for the purpose of sale. While it is true that possession of narcotics for sale requires proof of the sale purpose of the possession (*In re Coblentz,* 250 Cal.App.2d 896, 898 [59 Cal.Rptr. 19]), it may be circumstantial. (*People* v. *Miller,* 176 Cal.App.2d 571, 577 [1 Cal. Rptr. 656].) Such evidence may consist of the quantity of narcotic, the equipment found with it, the place it was found, the manner of packaging, and the opinion of an expert that the narcotic was being held for sale. (*People* v. *Aguilar,* 232 Cal.App.2d 173, 178 [42 Cal.Rptr. 666]; *People* v. *Rodriguez,* 238 Cal.App.2d 682, 687 [48 Cal.Rptr. 117]; *People* v. *Coblentz,* 229 Cal.App.2d 296, 302 [40 Cal.Rptr. 116]; *People* v. *Robbins,* 225 Cal.App.2d 177, 184 [37 Cal.Rptr. 244].) Here defendant had in his possession marijuana weighing 2,455 grams (*People* v. *Jackson,* 241 Cal.App.2d 189, 194 [50 Cal. Rptr. 437] [243 grams in conjunction with possession constituted reasonable cause to hold defendant on possession for sale]) of marijuana packaged in a manner commonly used by large wholesalers of marijuana and wrapped in coarse paper commonly used in Mexico for packaging marijuana. Upon the foregoing Officer Sanchez' expert opinion was that defendant held the marijuana for sale. (*People* v. *Foster,* 248 Cal.App. 2d 715, 717-718 [56 Cal.Rptr. 872].) To corroborate this,

defendant told Officer Sanchez that his wife did not know about his ''dealing'' (selling).

Among the many things appellant says the People did not prove is the falsity of his claim that he went to the apartment solely to give Alvarado a ride. The fact is that the trial judge did not believe defendant's testimony which included his further claim that Alvarado gave him the package to hold. No citation of authority is required to support the basic rule that the trial judge may reject the testimony of a witness if he does not believe that he is telling the truth. Here defendant's testimony conflicted with the circumstantial evidence pointing to the fact that defendant went to the apartment to buy marijuana and left there with the narcotic. The judge resolved the factual conflict against defendant and under the circumstances of this case we are bound by his determination.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.