Filed 5/28/13  P. v. Fleming CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B241293 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA363372) |
| v. | |
| RANDY FLEMING, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor H. Greenberg, Judge.  Affirmed.

Brandie Devall for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Randy Fleming was convicted, following a jury trial, of one count of possession for sale of marijuana in violation of Health and Safety Code section 11359. Appellant admitted that he had suffered various prior convictions, including two or more prior serious or violent felony convictions within the meaning of Penal Code sections 667, subdivisions (b) through (i) and 1170.12 (the "Three Strikes" law). The trial court sentenced appellant to a term of 25 years to life in state prison pursuant to the Three Strikes law.

Appellant appeals from the judgment of conviction, contending that the trial court erred in denying his motion to suppress and there is insufficient evidence to support his conviction. Appellant also contends that the trial court abused its discretion in denying appellant's motion to strike his prior convictions and the resulting sentence constituted cruel and unusual punishment. We affirm the judgment of conviction.


Facts

About 8:20 p.m., on October 13, 2009, Officer Nonora and his partner, Officer Francisco Arredondo, were on patrol in Los Angeles. Officer Nonora saw appellant exit a parked car with another individual, later identified as Kido Smith. Appellant had a dark black-colored grocery bag in one hand. Appellant looked around, made eye contact with the officers and looked startled. Appellant then immediately turned and tossed the bag onto the driver's seat of the car, closed the door and began to walk away.

Officer Nonora believed that appellant was making a suspicious movement. The officers stopped their car in the street, exited and yelled, "Police Department." Officer Nonora told appellant that he wanted to talk to him and told him to move over to the sidewalk on the opposite side of the street. Officer Nonora conducted a patdown search of appellant to check for weapons.

After the patdown, Officer Nonora walked over to appellant's car, shined his flashlight into the car, and saw the grocery bag that he had seen appellant with earlier. The bag was partially open, and inside the grocery bag there was another large clear plastic Ziploc bag containing what appeared to be marijuana.

2

Officer Nonora walked back over to appellant, handcuffed him and took his car keys, went to his car, opened and searched it, and retrieved the bag containing the marijuana. He also found a cell phone and 144 empty "dime baggies." The baggies were inside of the grocery bag. The officers also found $98 in cash on appellant. Officer Nonora did not find a lighter, matches, rolling papers, "blunts," or any items commonly used to ingest or smoke marijuana during the search of appellant or his person.

Appellant told the officers that the marijuana and cell phone belonged to him. He said that Smith had nothing to do with the marijuana. Appellant confirmed to the officers that he belonged to the 65 Menlo gang. He was arrested.

At trial, Officer Nonora opined that appellant possessed the marijuana for the purpose of sale. His opinion was based on the large amount of marijuana that appellant had, the large number of unused empty "dime bags" in appellant's possession, the lack of any drug ingestion paraphernalia consistent with personal use, and the money on appellant's person. Officer Nonora explained that the 74 grams (about 2.5 ounces) of marijuana in appellant's bag would fill 35 to 40 of the "dime bags." The bags would sell for about $350. In Officer Nonora's experience, it was common for marijuana users to also sell marijuana, to support their habit. Officer Nonora acknowledged that he did not find any scales, records of marijuana sales, or weapons during his search of appellant's person or car.[1]

The parties stipulated that a criminalist conducted an analysis of the material contained inside of the Ziploc bag which was booked into evidence in connection with the instant case and concluded that the material was marijuana with a net weight of 74.77 grams.

Kido Smith testified on appellant's behalf at trial. On October 13, 2009, appellant was dropping Smith off at home. Appellant stayed in the car because it was raining. As

---

[1] In addition, in response to a hypothetical question with facts matching the facts of this case, Los Angeles Police Officer Stephen McClean opined that the marijuana was possessed for sale. Officer McClean testified as a gang expert. A gang enhancement was alleged in this case, but the jury did not find it to be true.

Smith walked across the street he was stopped by police, who had drawn their guns. The officers told him that they were doing random checks because there had been a shooting in the area. The officers then ordered appellant to get out of the car. He complied. The officers patted the two men down and asked for identification. Smith did not see appellant with a plastic bag at any point that night.

Officer Nonora went to appellant's car and shined a light inside. He asked appellant if the car was his and if he could search it. Appellant replied, "What for?" Officer Nonora reached into appellant's pocket, took his car keys and searched the car. After about 10 to 20 minutes, the officer returned and said that he had found marijuana in the car. Appellant confirmed that the marijuana belonged to him. He said that Smith had nothing to do with it. The officers arrested appellant.

Appellant testified on his own behalf at trial. He gave substantially the same account of the police encounter as Smith did. Appellant acknowledged that he had marijuana in the car, but stated that the marijuana was inside a Ziploc bag inside of a dark grocery bag, rolled up and tucked between the seat and the drive shaft console of the car.

Appellant testified that the marijuana was for personal use. He stated that he was a heavy user of marijuana and smoked between four and five marijuana "blunts" per day. The amount of marijuana in his car would last him about three or four days. Appellant's wife did not approve of his marijuana habit. She had instituted a portion control system which involved the use of the baggies. She allowed him a few baggies a day. However, appellant only followed this system when his wife was around. He had the large amount of marijuana and baggies when he was arrested because he had just purchased both.

Appellant acknowledged that he was a member of the Menlo Boys (the original name of the 65 Menlo Gangster Crips). He was no longer a member of the 65 Menlo Gangster Crips. He also acknowledged that he had been convicted of several crimes involving issues of moral turpitude.

4

Discussion

1. Motion to suppress

Following a hearing on appellant's motion to suppress, the trial court found that the officers' detention of appellant was not lawful. The court found, however, that the marijuana found in appellant's car was admissible under the inevitable discovery doctrine. Appellant contends that the trial court erred in finding that this doctrine was applicable and in admitting the marijuana. We see no error.

The trial court found that the officers did "not have specific and articulable facts to detain." The court noted that Officer Nonora had testified that he did a quick patdown and then walked directly to the car and shined a flashlight into the car to check its contents. The court specifically found the officer to be credible. The court ruled: "And so, really, one way to look at it is the discovery would have been done inevitably, that it's – the way the court or the way the court is going to articulate it is that the seizure in this case is not a product of the illegal detention. It's not a result of the illegal detention. The evidence was discovered independent of the improper detention."

Evidence obtained during a stop, search or seizure which violates the Fourth Amendment must generally be excluded. (*Mapp v. Ohio* (1961) 367 U.S. 643.) Under the fruit of the poisonous tree doctrine, evidence that is gathered as a direct or indirect result of the illegal search will also be excluded. (*Wong Sun v. United States* (1963) 371 U.S. 471.)

There are exceptions to the exclusionary rule. Under the inevitable discovery doctrine, illegally seized evidence is admissible if "it would have been discovered by the police through lawful means." (*People v. Robles* (2000) 23 Cal.4th 789, 800.) The doctrine is "'an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.' [Citation.] The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct. [Citation.] The burden of

establishing that illegally seized evidence is admissible under the rule rests upon the government."  (*Id*. at pp. 800-801.)

To establish inevitable discovery, the prosecution "must demonstrate by a preponderance of the evidence that, due to a separate line of investigation, application of routine police procedures, or some other circumstance, the [unlawfully obtained evidence] would have been discovered by lawful means."  (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1072.)

In reviewing a trial court's ruling on a motion to suppress evidence obtained in an allegedly invalid search, an appellate court defers to the trial court's factual findings, whether, express or implied, where supported by substantial evidence.  In determining whether, under those facts, the search or seizure was reasonable under the Fourth Amendment, an appellate court exercises its independent judgment. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)

Here, Officer Nonora testified at the suppression hearing that he detained appellant and conducted a patdown search to check for weapons.  He explained that he decided to undertake this search because appellant was wearing baggy clothing and he thought appellant might be a gang member.  After Officer Nonora made sure that appellant did not have any weapons, "because of the – his action earlier, I walk over to the car, and I shined my flashlight into the interior of the car, and I saw the grocery bag."  During the patdown, Officer Nonora did not ask appellant about looking into the car and did not ask if he had anything in the car.  The trial court found this testimony credible, and we defer to that finding.[2]

Under these facts, the marijuana was not discovered by unlawful means and was not the fruit of a poisonous tree.  This is not a case where the unlawful stop or search itself produced incriminating evidence or evidence pointing to the location of the later-

---

[2] Smith and appellant also testified at the suppression hearing.  Their accounts of the stop were essentially the same as their trial testimony, summarized above.  This account differed from Officer Nonora's account.  The court was not required to, and did not find Smith's and appellant's testimony credible.

discovered contraband. Nothing appellant said or did during his brief detention and nothing found during the patdown search gave the officers any indication that contraband was in the car. This is also not a case where the illegal stop prevented the suspect from leaving with the contraband and thereby evading detection of the contraband. Appellant had left the marijuana in the car and was walking away from the car when police stopped him. Thus, it is difficult to see how the officers' unlawful behavior in any way led to the discovery of the marijuana. The officers could simply have walked up to the car and looked inside it at any point after appellant began to walk away from it.

Further, even assuming for the sake of argument that the discovery of the marijuana was indirectly related to the stop, it would fall under the inevitable discovery exception. The testimony shows that Officer Nonora was pursuing a "separate line of investigation" when he went over to the car. (See *People v. Hughston, supra,* 168 Cal.App.4th at p. 1072.) The officer searched appellant first because he was concerned that appellant was armed. This concern arose from appellant's appearance. The officer searched the car because he had earlier seen appellant throw the bag into the car after making eye contact.

The car was parked on the street, and the officers were free to walk up to it. Looking inside the car through the windows was not a search. (*People v. Sandoval* (1985) 164 Cal.App.3d 958, 962-963; *People v. Rogers* (1978) 21 Cal.3d 542, 549; *People v. Vallee* (1970) 7 Cal.App.3d 167, 172.) Officer Nonora's use of a flashlight did not transform the viewing into an unlawful search. (See *People v. Rogers*, *supra*, 21 Cal.3d at p. 549.)

Once Officer Nonora saw the bag containing a substance that resembled marijuana on the car's front seat, he could lawfully search the car. Under the automobile exception to the search warrant requirement, a police officer may lawfully search a vehicle without a warrant if the search is "'based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.'" (*People v. Evans* (2011) 200 Cal.App.4th 735, 753 [discussing the automobile exception]; *People v. Vallee*, *supra*, 7 Cal.App.3d at p. 172 ["Where officers lawfully approach a vehicle and observe in plain

view contraband or other evidence of crime they are warranted in searching the vehicle and in making an arrest."].)  That was the case here.

     2.  Sufficiency of the evidence

Appellant contends that there is insufficient evidence to show that he possessed the marijuana with the intent to sell it.

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves.  Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  [Citations.]  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.]  "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding."  [Citation.]  We do not reweigh evidence or reevaluate a witness's credibility.  [Citation.]'"  (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

It is well settled that an intent to sell narcotics may be inferred from circumstantial evidence.  (*People v. Miller* (1959) 176 Cal.App.2d 571, 577; *People v. De La Torre* (1968) 268 Cal.App.2d 122, 126.)  Among the circumstances to be considered are "the quantity of narcotic, the equipment found with it, the place it was found, the manner of packaging, and the opinion of an expert that the narcotic was being held for sale." (*People v. De La Torre*, *supra*, 268 Cal.App.2d at p. 126.)

Here, the marijuana weighed 74 grams.  This would amount to 35 to 40 "dime bags."  Appellant had numerous small bags of the type used to sell marijuana, referred to

as "dime bags."[3]  He had no paraphernalia to smoke the marijuana, such as rolling papers, blunts, a pipe, a lighter or matches.  Based on these facts, Officers McClean and Nonora opined that the marijuana was possessed for sale.  Officer Nonora specifically noted that it was common for marijuana users to sell marijuana to support their habit.

This is sufficient to support a reasonable inference that appellant possessed the marijuana for sale.  There were no items associated with personal use in the car.  There was an item, the bag of baggies, that is associated with sales.  The amount of marijuana was not huge, but it was a large amount to have solely for personal use.

Appellant contends that the amount of marijuana and cash found was too small to support an inference of intent to sell.  He cites a number of cases in which the amount of narcotics or cash found by police was much larger than the amount found in this case. (*People v. De La Torre*, *supra*, 268 Cal.App.2d 122 [2,544 grams of marijuana]; *People v. Marquez* (1968) 259 Cal.App.2d 593; *People v. Fitzwater* (1968) 260 Cal.App.2d 478 [6 pounds of marijuana]; *People v. Clay* (1969) 273 Cal.App.2d 279; *People v. Newman* (1971) 5 Cal.3d 48, 53 [$4,000 worth of drugs].)  Nothing in those cases requires such a large amount of narcotics to infer an intent to sell.

Appellant further contends that it is not reasonable to infer that he intended to sell the marijuana because he stated that the marijuana was for personal use and that he was in the process of obtaining a medical marijuana card at the time of his arrest.  The jury was free to believe appellant's testimony that he possessed the marijuana solely for his personal use, but it was certainly not required to accept it.  Appellant made no reference to seeking a medical marijuana card.  He did make two references to a medical appointment, but provided no specifics of that appointment.  One of those references was

_____

[3] Appellant is correct that the marijuana was not actually packaged in the small baggies.  Appellant himself testified that he had just purchased the marijuana and baggies.  He also indicated that he intended to divide the marijuana up and place it in the baggies.  Thus, it is not significant that the marijuana was not yet packaged in the baggies.

stricken. Appellant did testify that he smoked a lot of marijuana because he enjoyed it. Nothing in appellant's testimony makes an inference of intent to sell unreasonable.

3. Cruel and unusual punishment

Appellant contends that his sentence of 25 years to life in state prison violates the state and federal constitutional ban on cruel and unusual punishment. He specifically contends that the punishment is cruel and unusual because he is 46 years old and will likely spend the rest of his life in prison, the current offense does not present a significant danger to society and does not imply that there was an increased risk of recidivism, and the conduct at issue would have been legal if he had possessed his medical marijuana card. He contends that the punishment is not proportional to his offense.

Respondent contends that appellant has waived this issue by failing to raise it in the trial court. We agree.

The issue of whether appellant's sentence is cruel and unusual punishment is a fact intensive one, and is based on the nature and facts of the crime and offender. (See *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196.) It is waived if not raised in the trial court. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27; see generally *People v. Scott* (1994) 9 Cal.4th 331, 356.) Further, assuming for the sake of argument that this claim were not waived, given the facts before us, we would find that appellant's sentence did not constitute cruel and unusual punishment.

The United States Supreme Court has stated that a "standard of gross disproportionality" has been "articulated in our Cruel and Unusual Punishments Clause precedents." (*United States v. Bajakajian* (1998) 524 U.S. 321, 336, citing *Solem v. Helm* (1983) 463 U.S. 277, 288 and *Rummel v. Estelle* (1980) 445 U.S. 263, 271; see *People v. Norman* (2003) 109 Cal.App.4th 221, 230.) "[T]he 'precise contours' of the proportionality principal 'are unclear,' [citation]" and the principle is "applicable only in the 'exceedingly rare' and 'extreme' case." (*Lockyer v. Andrade* (*Andrade*) (2003) 538

U.S. 63, 72-73; see *People v. Em* (2009) 171 Cal.App.4th 964, 977; see also *Gonzalez v. Duncan* (*Gonzalez*) (9th Cir. 2008) 551 F.3d 875, 879-880.)

Here, appellant received his 25 year to life sentence pursuant to the Three Strikes law. When the legislature has mandated lengthy sentences for recidivism, appellate courts consider an offender's current felony and his history of felony recidivism to determine the gravity of the offense for proportionality purposes. (*Ewing v. California* (2003) 538 U.S. 11, 29.)

Appellant has a lengthy and serious criminal history including 27 prior serious or violent felony convictions, as detailed in section 4, *post*. Although his current offense is not inherently violent and is less serious than his prior offenses, his commission of this offense shows a continued willingness to violate the law. Further, appellant's behavior during trial shows he is a continued threat to society. As is detailed in section 4, *post*, appellant was remanded into custody for attempting to intimidate the prosecutor and the prosecution's witnesses. His sentence is not cruel and unusual punishment. (See *Ewing v. California, supra,* 538 U.S. at p. 29 [sentence of 25 years to life imposed on a third-strike offender who stole three golf clubs does not violate the Eighth Amendment's prohibition against cruel and unusual punishment]; see also *Andrade*, *supra*, 538 U.S. 63 [two consecutive sentences of 25 years to life imposed on a third-strike offender who stole approximately $150 worth of videotapes in two separate incidents not cruel and unusual punishment]; *Rummel v. Estelle*, *supra*, 445 U.S. at pp. 268-286 [the Supreme Court upheld a sentence under a Texas recidivist statute of life with the possibility of parole for obtaining $120.75 by false pretenses, even where the defendant's previous offenses consisted of fraudulent use of a credit card to obtain goods and services worth $80 and passing a forged check in the amount of $28.36].)

Appellant relies on *Harmelin v. Michigan* (1991) 501 U.S. 957 and *People v. Carmony* (2005) 127 Cal.App.4th 1066 to show disproportionality. That reliance is misplaced. In *Carmony*, the Court of Appeal found that the defendant's sentence of 25 years to life in prison for failing to update his registration as a sex offender was cruel and unusual punishment. However, the defendant's offense was a violation of a regulatory

11

requirement. He had just registered a month before the required update and was still at that registered address when it was time to update. Thus, his address was known to authorities and his failure to update did not pose a direct or immediate danger. Appellant's offense was not so benign. In *Harmelin*, the United States Supreme Court upheld a sentence of life without the possibility of parole for drug possession.

Appellant also contends his sentence is grossly disproportionate to his crime because it is the same punishment he would have received if he had been convicted of the more serious offenses of second degree murder or forcible rape. However, appellant's sentence is not dissimilar to others imposed under the Three Strikes law that have repeatedly been upheld by California courts. (See, e.g., *People v. Romero* (2002) 99 Cal.App.4th 1418, 1431-1433 [sentence of 25 years-to-life imposed for third strike of felony petty theft]; *People v. Goodwin* (1997) 59 Cal.App.4th 1084, 1093-1094 [sentence for 25 years-to-life imposed for third strike of petty theft with a prior conviction]; *Ewing*, *supra*, 538 U.S. 11, 20-21 [sentence of 25 years-to-life in prison for felony theft of golf clubs under California's Three Strikes law, with prior felonies of robbery and burglary, did not violate federal prohibition on cruel and unusual punishment].)

In short, appellant has not been sentenced to 25 years to life in prison because he possessed marijuana for sale. Rather, he was so sentenced because he is a career criminal who has demonstrated that he has no intention of abiding by the laws of the State of California. Appellant's sentence is not so disproportionate to his crimes that it shocks the conscience and offends fundamental notions of human dignity. As applied, the Three Strikes law does not violate the constitutional prohibitions against cruel and/or unusual punishment.


4. Refusal to strike

Appellant contends that the trial court abused its discretion when it refused to strike some or all of his prior strike convictions. We see no abuse of discretion.

In ruling on a motion to strike a prior conviction, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious

12

and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Rulings on motions to strike prior convictions are reviewed under the deferential abuse of discretion standard. Under that standard an appellant who seeks reversal must demonstrate that the trial court's decision was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.)

Here, the current offense was not itself a violent or serious felony. Further, as the court recognized, the amount of marijuana possessed for sale was relatively small. The court noted, however, that appellant had a very cavalier attitude toward his current offense and the law.

The court also considered, as it was required to, appellant's extensive criminal record. Appellant had 27 prior convictions within the meaning of the Three Strikes law as follows: 16 counts of robbery; one count of attempted murder; four counts of rape; four counts of lewd act with a child under 14 years of age; four counts of assault with a firearm; three counts of false imprisonment; and two counts of forcible sexual penetration. Appellant committed many of these crimes with fellow 65 Menlo Gangster Crip gang members. The majority of those convictions arose from a crime spree which took place from 1984 through 1985. Toward the end of this crime spree, appellant and his accomplices shot and paralyzed a police officer, who ultimately died near the time of sentencing in the instant case as a result of complications from the gunshot wound. The court recognized that appellant's most serious prior convictions were old and about half of the convictions took place on a single occasion, but also found that the offenses were "exceedingly violent."

The court also recognized that appellant had not led a crime-free life since those convictions. During his imprisonment for the above-described crimes, appellant continued to engage in violent conduct and disobey the law. He was found to have

13

possessed two gallons of inmate-manufactured alcohol in 1988; falsified an inmate pass in 1988; engaged in fist-fighting with another inmate in 1989; possessed an inmate-manufactured "slashing type" weapon concealed inside an apple in 1989; "refus[ed] to lock-up" in 1990; posed as another inmate to make a telephone call in 1991; engaged in fist-fighting with other inmates where one inmate suffered a stab wound to the head and another inmate suffered a stab wound to the neck in 1996; and possessed a stabbing instrument in 1997.

Appellant was paroled in 2003. His parole was revoked in 2006 when he violated his release conditions by associating with other known gang members in a known gang location in the presence of other gang members, multiple weapons, and narcotics. In 2007, appellant was arrested when officers entered a home with a search warrant and found appellant in the presence of two other 65 Menlo Gangster Crips and a large amount of marijuana and marijuana packaging materials.

The court also considered appellant's background, character and prospects. The court found that appellant had maintained his gang ties and had been found on numerous occasions with gang members and at gang events. During the pendency of this trial, appellant was remanded into custody for activity which was "essentially a threat to kill the prosecutor." Further, appellant was unemployed and smoked a lot of marijuana.

The court denied the motion to strike, explaining: "The court would note that the court is bound and needs to consider factors beyond the present offense in making this determination, although, the present offense certainly was considered by the court and to some extent was determined to be a mitigating factor that would support striking perhaps some or all of the strikes. However, the court, in considering the entire picture as the court described, and the law requires, determined that that would be inappropriate in this case."

The trial court's comments indicate that it properly considered the nature and circumstances of appellant's current and prior convictions and the particulars of his background, character and prospects, and reached an impartial decision. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.) Thus, the trial court did not abuse its discretion.

14

Disposition

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ARMSTRONG, J.


We concur:


TURNER, P. J.


KRIEGLER, J.